# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CRISTY BRATTEN, | ) |
| | ) |
| v. | ) Case No. CIV-16-232-F |
| | ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration, | ) |
| | ) |
| Defendant.[1] | ) |

## REPORT AND RECOMMENDATION

Plaintiff Cristy Bratten seeks judicial review of the Social Security Administration's denial of disability insurance benefits (DIB) and supplemental security income (SSI). This matter was referred by United States District Judge Stephen P. Friot for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below, it is recommended that the Commissioner's decision be affirmed.

## I. Procedural Background

Plaintiff filed applications for DIB and SSI alleging disability beginning August 1, 2009. Administrative Record (AR), [Doc. No. 12], 245-253. After the Social Security Administration (SSA) denied her applications initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge (ALJ). Administrative Law Judge Howard O'Bryan, Jr. held a hearing on February 6, 2012, AR 49-65, and thereafter issued an unfavorable decision. On appeal, the Social Security Appeals Council remanded the case and directed the subsequent ALJ to obtain

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the Court substitutes Nancy A. Berryhill, Acting Commissioner of Social Security Administration, as the proper Defendant in this action.

evidence from a vocational expert (VE) to clarify the effect of the assessed limitations on the claimant's occupational base. AR 9. Administrative Law Judge Kim D. Parrish held a second hearing on May 20, 2014, AR 27-38, and issued an unfavorable decision on August 11, 2014. AR 9-19. The Social Security Appeals Council denied review. AR 1-3. Thus, the ALJ's decision dated August 11, 2014, became the final decision of the Commissioner and is the subject of this judicial review.

## II.     The ALJ's Decision

The ALJ followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (explaining five-step sequential evaluations process); *see also* 20 C.F.R. §§404.1520; 416.920. The ALJ first determined Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR 11.

At step two, the ALJ determined Plaintiff has two severe impairments: schizoaffective disorder and adjustment disorder. *Id*.

At step three, after a thorough discussion of the evidence, the ALJ found that neither of Plaintiff's severe impairments meets or medically equals any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 15.

The ALJ next determined Plaintiff's residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: work in relative isolation; limited contact with coworkers and general public; routine rep [sic] work not involving detailed instructions; and changes in work place not to exceed 10% in frequency.

AR 16.

At step four, the ALJ found claimant could not perform her past relevant work as cashier II, fast food worker or convenience store worker. AR 18. At step five, based on the testimony of

a VE, the ALJ found Plaintiff capable of performing jobs existing in significant numbers in the national economy including floor waxer, window cleaner and housekeeper. AR 19. Thus, at step five of the sequential evaluation, the ALJ determined Plaintiff is not disabled.

### III. Issues Presented for Judicial Review

Plaintiff alleges the ALJ erred in assessing her RFC. Pl.'s Brief, [Doc. No. 14], 6-13. Plaintiff further contends the ALJ erred at step two in failing to find obesity, diabetes and headaches to be severe physical impairments. Pl.'s Brief, 13-17. Finally, Plaintiff contends the ALJ improperly "cherry-picked" a third-party function report as well as Plaintiff's own function report, and erred by citing only the portions of those reports supportive of a finding of nondisability.

### IV. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if other evidence in the record overwhelms it, or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment

for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

V.   **Analysis**

   A.   **The ALJ's "Errant RFC"**

Plaintiff challenges several aspects of the ALJ's RFC determination, his questions to the VE, and the resulting testimony of the VE, all characterized as issues involving an "errant RFC."

Though it is challenged by Plaintiff, the ALJ's hypothetical question to the VE accurately reflected the ALJ's RFC determination. The ALJ asked the VE to consider a hypothetical individual with Plaintiff's vocational factors who:

> would, first of all, be required to work in relative isolation with limited contact with coworkers and the general public. In addition, the individual would perform routine, repetitive work not involving any detailed instructions. And, adopting the previous decision, the claimant could deal with changes in the workplace not to exceed ten percent in frequency.

AR 36-37.

First, Plaintiff alleges the phrase, "in relative isolation," is non-specific and was not adequately defined for the VE. But research has revealed no case where either the Tenth Circuit or this Court has found the phrase "in relative isolation" to be too non-specific to express a work-related function in an RFC. Research did reveal, however, that the phrase is frequently used in RFC assessments to describe a work-related functional limitation. *See, e.g., Rose v. Colvin*, 634 Fed. App'x. 632, 636 (10th Cir. 2015) (Plaintiff "must work in a relatively isolated environment."); *Shelton v. Colvin*, 2015 WL 5569024, at *1 (W.D. Okla. Aug. 24, 2015) (unpublished report and recommendation), *aff'd*, *Shelton v. Colvin*, ___ Fed. App'x ___, 2016 WL 6087652 at *3 (10th Cir. Oct. 18, 2016) (term "relative isolation," modified by "limited ability to work with general public," is sufficiently precise); *Phillips v. Colvin*, No. CIV-14-264-L, 2015 WL 1227837, at *1

(W.D. Okla. Mar. 17, 2015) (unpublished order); *Jackson v. Colvin*, No. CIV-14-141-STE, 2015 WL 1143579, at *1 (W.D. Okla. Mar. 13, 2015) (unpublished order). In this case, as in *Shelton*, the ALJ sufficiently defined the phrase "in relative isolation" as meaning, "limited contact with coworkers and the general public." AR 16. Thus, the ALJ adequately defined the term "relative isolation."

Nevertheless, after misconstruing this phrase as meaning either, "working alone," or "working in physical isolation from others," she then argues that only three jobs in the Dictionary of Occupational Titles (DOT) are so defined, none of which was listed by the VE as a job Plaintiff could perform. But none of the cases cited above have construed the phrase, "relative isolation" to mean working completely alone or in physical isolation from others. Moreover, the DOT rates "Dealing with People" as "not significant" for every job identified by the VE. *See* floor waxer, DOT #381.687-034; window cleaner, DOT #389.687-014; and housekeeper, DOT #323.687-010. Accordingly, the jobs identified by the VE fall within the parameters of the ALJ's hypothetical question and are consistent with the definitions in the DOT.

Plaintiff also contends the "housekeeper" job identified by the VE as DOT #323.687-010[2] does not fit within the ALJ's RFC determination because it is defined as having a "Reasoning Level 2," requiring the worker to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions." According to Plaintiff, she would not be able to perform the job of housekeeper because the RFC limited her to "routine repetitive work not involving detailed instructions." But the DOT also notes this occupation requires only the performance of

---

[2] The DOT number identified by the VE is actually a subcategory of housekeeping jobs—specifically, "Cleaner, Hospital." *Id.* Another subcategory, "Cleaner, Housekeeping," is defined at DOT #323.687-014 as "Reasoning Level 1—Apply commonsense understanding to carry out simple one-or-two-step instructions."

5

repetitive or short-cycle work." *Id.* Even if the job of housekeeper, as identified by the VE, were excluded from the occupations Plaintiff could perform, the number of jobs available in the national economy for the other two occupations is significant. The VE testified there are 52,028 floor waxer jobs in the national economy and 531 such jobs in Oklahoma. Additionally, there are 69,931 window cleaner jobs in the national economy and 652 in Oklahoma. AR 37. *See Trimiar v. Sullivan*, 966 F.3d 1326, 1330 (10th Cir. 1992) (finding 650-900 jobs in Oklahoma to be a "significant number," but emphasizing there is no "bright line" test). Reversal on this ground is not required

Plaintiff also challenges the ALJ's RFC as "nonspecific" based on the ALJ's limiting Plaintiff to jobs that would not have changes in workplace more than 10% of the time. Pl. Br. At 11-12). Plaintiff contends the VE did not explain how he calculated the 10% change in workplace "so 'the remainder of the step four assessment takes place in the VE's head' and 'we are left with nothing to review.'" Pl.'s Brief, 11 (*quoting Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996). But this case, unlike *Winfrey*, is a step-five case; the holding in *Winfrey* applies to step-four cases. Here, the ALJ determined at step four that Plaintiff could not perform her past relevant work. In other words, the Plaintiff met her burden of proof at step four, requiring the ALJ to continue the analysis at step five. Plaintiff's challenge to the ALJ's step-four findings is, therefore, perplexing. Assuming Plaintiff is not arguing that she does, in fact, have the ability to do her past relevant work, reversal is not warranted based on the ALJ's step-four analysis.

Finally, Plaintiff argues the ALJ's decision should be reversed and the case remanded because the ALJ did not question the VE regarding any potential conflict between his testimony and the information in the DOT. Pl.'s Brief, 14-15. But in this case, there was no conflict between the VE's testimony and information in the DOT. Thus, the ALJ's mere failure to ask a perfunctory

question the answer to which would have been a simple "no," cannot be construed as anything other than harmless error. *See Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir. 2009) (where no conflicts exist between VE testimony and DOT, ALJ's failure to inquire as to potential conflicts is harmless error).

B. **"Severe Impairment Errors"**

Plaintiff contends the ALJ erred at step two of the sequential evaluation by failing to identify her obesity, diabetes and headaches as "severe" impairments. The ALJ discussed and considered Plaintiff's obesity and diabetes in the unfavorable decision, but found they were not severe. AR 12, 15. The ALJ did not discuss Plaintiff's alleged "migraine headaches" because the record does not support such a diagnosis.

The Social Security Regulations define "severe impairment:"

> As explained in 20 CFR, sections 404.1520, 404.1521, 416.920(c), and 416.921, at the second step of sequential evaluation it must be determined whether medical evidence establishes an impairment or combination of impairments "of such severity" as to be the basis of a finding of inability to engage in any SGA. An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities).

Social Security Ruling (SSR) 85-28, 1985 WL 56856 at *3. The mere existence of an impairment—even a severe impairment—does not warrant a finding of "disabled." To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995).

7

Plaintiff contends the ALJ erred in failing "to discuss how her obesity affected her overall health, what other conditions it caused and the subsequent ability to maintain a job with such condition." Pl.'s Brief, 13.

In 1999, obesity was removed from the list of presumptively disabling impairments. SSR 00-3p. at *1. Moreover, the mere existence of obesity does not mean it is a "severe" impairment:

> There is no specific level of weight or BMI that equates with a "severe" or a "not severe" impairment. Neither do descriptive terms for levels of obesity (e.g., "severe," "extreme," or "morbid" obesity) establish whether obesity is or is not a "severe" impairment for disability program purposes. Rather, we will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe.

*Id.* at *4. In this case, Plaintiff does not point to any medical record or physician opinion indicating that Plaintiff's obesity exacerbates the functional limitations caused by another impairment.

The same is true of Plaintiff's diabetes. The medical records demonstrate Plaintiff was diagnosed with "new onset diabetes" during an emergency room visit on November 12, 2009. AR 378-384. Her symptoms were extreme thirst, frequent nocturnal urination and "a little" disorientation upon first awakening. AR 378. The ALJ discussed the medical records concerning both Plaintiff's obesity and diabetes. AR 12. But as there are not medical records indicating either of these conditions cause any functional limitations, the ALJ did not err in failing to identify them at step two.

The ALJ also considered Plaintiff's diabetes under the revised criteria for evaluating endocrine diseases effective in June 2011. The ALJ noted Plaintiff has not had heart failure, kidney failure, multiple episodes of hypoglycemia or acidosis, amputations, loss of gait or station or loss of fine and gross dexterity. AR 15. Any of these conditions would be indicative of a "severe impairment."

The ALJ did not discuss Plaintiff's alleged "migraine headaches" because there was simply nothing to discuss. Plaintiff points to one medical record of an emergency room visit on August 2, 2006, during which Plaintiff complained of abdominal pain, nausea, and headache. AR 372. She was treated and released with a diagnosis of constipation and cephalgia. AR 373. The record relied upon by Plaintiff does not demonstrate she suffers from "migraine headache."

Moreover, Plaintiff's step-two argument fails as a matter of law. An impairment is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); 416.920(c). A claimant must make only a de minimis showing to advance beyond step two. *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004). To that end, a claimant need only establish, and an ALJ need only find, one severe impairment to proceed to step three of the sequential evaluation. *See Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (*citing Oldham v. Astrue*, 509 F.3d 1254, 1256–57 (10th Cir. 2007) (noting that, for step two, the ALJ explicitly found that the claimant "suffered from severe impairments," which "was all the ALJ was required to do"). This rule of law is grounded in the Commissioner's regulation describing step two, which states: "If you do not have a severe medically determinable physical or mental impairment ... or a combination of impairments that is severe ..., we will find that you are not disabled." 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). By these plain terms, the regulations require a claimant to show only "a severe" impairment—that is, one severe impairment—to avoid a denial of benefits at step two. *Id.* If the ALJ finds one severe impairment, the ALJ may not deny benefits at step two but must proceed to the next step. Thus, the failure to find a particular impairment to be severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe. Here, the ALJ found two other impairments severe. Plaintiff's step-two argument does not require reversal and remand.

### C. "Cherry- Picking" Functional Reports

Plaintiff contends the ALJ committed reversible error by mentioning only parts of her function report and a function report completed by her friend, Brook McNew. Pl.'s Brief, 18-24. If the ALJ had considered all statements from the function reports, Plaintiff argues, the ALJ would necessarily have found "marked restrictions in social function, activities of daily living and concentration persistence and pace" leading to the ultimate conclusion that Plaintiff's mental impairments met a Listing. Pl.'s Brief, 18. Plaintiff's argument appears to be advocating the application of legal principles pertinent to medical opinions to functional reports completed by lay witnesses. But subjective complaints, alone, cannot establish the existence of a disabling impairment.

Under the Commissioner's regulations, a finding of disability presupposes, inter alia, the existence of a medically determinable impairment. *See* 20 C.F.R. §§ 404.1527(a)(1); 416.927(a)(1) (disability is the inability "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). A medically determinable impairment is an "anatomical, physiological, or psychological abnormalit[y] which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1508; 416.928. The existence of a medically determinable impairment must be established by "medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." *Id.*

Because medical evidence is required to prove the existence of an impairment, Plaintiff's contention is simply incorrect. The opinions of lay witnesses and a claimant's own subject complaints are not adequate to demonstrate the existence of a medically determinable impairment,

much less an impairment that is severe enough to meet a Listing.  Thus, Plaintiff's final argument does not require reversal of the Commissioner's decision.

## RECOMMENDATION

For the reasons set forth herein, it is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation.  See 28 U.S.C. § 636.  Any objection must be filed with the Clerk of the District Court by March 2, 2017.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 16th day of February, 2017.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE